**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| IDQ OPERATING, INC., | ) |
| | ) |
| | ) Case No. 6:15-cv-00781-JRG-KNM |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| vs. | ) |
| | ) **ORAL ARGUMENT** |
| AEROSPACE COMMUNICATIONS HOLDINGS | ) **REQUESTED** |
| CO., LTD., | ) |
| | ) |
| Defendant. | |

**DEFENDANT AEROSPACE COMMUNICATIONS HOLDINGS CO., LTD.'S**
**AMENDED REPLY IN SUPPORT OF ITS**
**MOTION TO QUASH SERVICE OF THE COMPLAINT**

## TABLE OF CONTENTS

I.    ACH PROPERLY SETS FORTH THE FACTS AT THE AAPEX TRADE SHOW, AND NO EMPLOYEE OF ACH WAS EVER SERVED AT THE TRADE SHOW ................................................................................................... 2

II.    ACH WAS NOT SERVED AT THE TRADE SHOW ...................................................... 3

III.    COUNSEL FOR ACH COULD NOT BE SERVED .......................................................... 4

IV.    ACTUAL NOTICE IS IRRELEVANT TO QUESTION OF PROPER SERVICE ........... 4

V.    COURT-WAIVER OF THE HAGUE REQUIREMENT IS NOT PROPER HERE ......... 4

VI.    CONCLUSION:  SERVICE SHOULD BE QUASHED AND ACH SHOULD BE SERVED UNDER THE HAGUE ..................................................................................... 5

# TABLE OF AUTHORITIES

## CASES

*Ackerman v. Glob. Vehicles U.S.A., Inc.*,
    No. 4:11-cv-687-RWS, 2011 WL 3847427 (E.D. Mo. 2011) ............................................5

*Brown v. China Integrated Energy, Inc.*,
    285 F.R.D. 560 (C.D. Cal. 2012) ......................................................................................5

*In re GLG Life Tech Corp. Sec. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012) ......................................................................................5

*Marcantonio v. Primorsk Shipping Corp.*,
    206 F.Supp.2d 54 (D.Mass. 2002) ....................................................................................5

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................................................5

*LG Elecs., Inc. v. ASKO Appliances, Inc.*,
    No. 08-cv-828-JAP, 2009 WL 1811098 (D. Del. 2009)......................................................5

*The Knit With v. Knitting Fever, Inc.*,
    Nos. 08-cv-4221, 08-cv-4775, 2010 WL 4977944 (E.D. Pa. 2010) .................................5

## STATUTES AND OTHER AUTHORITY

Fed. R. Civ. P. 4(f) ..............................................................................................................4-5

Fed. R. Civ. P. 26(b)(2) ..........................................................................................................5

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents............*passim*

IDQ alleged service on ACH via Mr. Jiang at the AAPEX trade show, but Mr. Jiang of ACH was never served—as noted in a declaration from Mr. Jiang. In its Response, IDQ presents a declaration from IDQ's process server, Mr. Druckman, which is filled with inaccuracies and errors. The new Affidavit from IDQ's process server includes the following errors or fictions:

1)      The Druckman Affidavit erroneously claims he spoke with a person identified as Bruce Jiang and that person verbally confirmed he was Bruce Jiang. This is incorrect, as, in Paragraph 3 of Mr. Jiang's second declaration, he explains:

> When Mr. Druckman first approached the booth, he spoke with Jun Yang, an employee of Zhejiang Litai Plastic Mould Co., Ltd. ("Litai"). Mr. Yang was with two customers and was too busy to speak with Mr. Druckman at that time. Mr. Yang directed Mr. Druckman to Wei Wu, also an employee of Litai. At that point, Mr. Druckman communicated with Mr. Wu, not me. I was not at the booth at the time, and Mr. Druckman never spoke with me, never saw me, and was never directed to me – it was all with Mr. Wu, not me. The description does not even match my appearance. I am 5'7" and weigh 154 pounds.

2)      The Druckman Affidavit erroneously claims he "served" a person wearing a name tag that read "Bruce Jiang."  This is incorrect, as,  in Paragraph 4 of Mr. Jiang's second declaration, he states:

> Mr. Druckman is flatly wrong in the assertions of Paragraph 10, as he certainly did not "approach [me] and … [see that I] was wearing an AAPEX name tag with the name 'Bruce Jiang' on it" and did not "ask[] … if [I] was Bruce Jiang" and did not "confirm[] [that I] was [me]."  In fact, it is impossible that Mr. Druckman served someone wearing a name tag that read "Bruce Jiang" as my name tag said "Qiuhua Jiang," not "Bruce."

3)      IDQ erroneously claims that Mr. Jiang works with refrigerant products. This is incorrect. IDQ bases its allegation on outdated information from Mr. Jiang's outdated LinkedIn profile. In Paragraph 8 of Mr. Jiang's second declaration, he explains:

> I created this LinkedIn account in 2012/2013 when I first joined ACH, at which time I was originally assigned to refrigerant products. However, one-half year later, I was reassigned to the car floor mat business. Since then, to the best of my memory, I have not accessed or not logged into the LinkedIn account. Indeed, I have since forgotten both my LinkedIn ID and password.

1

IDQ presents entirely inaccurate information about the attempted service at the AAPEX trade show. ACH has now submitted 4 additional declarations that support the facts in Mr. Jiang's original declaration. IDQ's arguments otherwise are erred. ACH has simply never been served.

## I.  ACH PROPERLY SETS FORTH THE FACTS AT THE AAPEX TRADE SHOW, AND NO EMPLOYEE OF ACH WAS EVER SERVED AT THE TRADE SHOW

IDQ never served ACH at the AAPEX trade show; instead, Mr. Druckman served Mr. Wei Wu, an employee of Litai. The facts set forth by ACH are fully supported by the original decision of Mr. Jiang (of ACH) and also by the new declarations of Mr. Wei Wu (an employee of Litai , not ACH, and the person allegedly "served"), Mr. Jun Yang (an employee of Litai, not ACH, and the person who directed Mr. Druckman to Mr. Wu), and Brook Xia (an ACH employee who worked another booth at the trade show). *See* Second Jiang Dec. at ¶3; Wu and Yang Decs. at¶ 3; Xia Dec. at ¶¶ 10-11. Mr. Jiang's statements regarding the AAPEX trade show and Mr. Jiang's role at the trade show were entirely accurate. No one at the ACH booth worked with refrigerants.[1] Indeed, ACH's booth was clearly directed to floor mats, and not refrigerants, as shown in the picture in Mr. Jiang's second declaration.  *See* Jiang Second Dec., ¶2.

IDQ alleges that Mr. Jiang's statements regarding the badges are inaccurate. Dkt. 26 at 6. At the time of Mr. Jiang's original declaration, he did not recall that his badge or those of others included company information, *although he never said they did not wear badges at all*. Second Jiang Dec, ¶7. Mr. Jiang conducted a further review of the badges worn, and he confirmed that he was mistaken. *Id.* This fact, however, is irrelevant, as Mr. Jiang was not present at the booth, Mr. Jiang's name tag said "Qiuhua Jiang," and Mr. Druckman did not engage with anyone with a name tag that said "Bruce Jiang." Second Jiang Dec., ¶4; Wu and Yang Decs., ¶3; Xia Dec., ¶11.

---

[1] ACH did have one employee, Brook Xia, who attended the trade show to support another company, Airosol Company, Inc. Xia Dec., ¶2. Mr. Xia does work in refrigerants; however, Mr. Xia did not support the ACH booth but rather supported the Airosol booth. *Id.* at ¶¶4, 9.

## II.      ACH WAS NOT SERVED AT THE TRADE SHOW

As noted above, IDQ's allegations regarding service at the AAPEX trade show have one major flaw—the gentleman that Mr. Druckman left the service papers with was Mr. Wu, an employee of another company. Mr. Druckman did not serve ACH or Qiuhua Jiang of ACH.

Mr. Druckman erroneously alleges that he engaged with Mr. Jiang at the ACH booth, that Mr. Jiang confirmed his identity, that he informed Mr. Jiang that he had papers for him, and that he served him at the booth. Dkt. 26-1, ¶11. Mr. Druckman also erroneously states that he served a gentleman wearing a "Bruce Jiang" name tag. *Id.* at ¶10. None of these allegations are accurate. Mr. Jiang <u>was not</u> at the booth when Mr. Druckman was there, and Mr. Jiang's name tag read "Qiuiha Jiang" <u>not</u> "Bruce Jiang," as shown in the photograph in the Mr. Jiang's second declaration. Second Jiang Dec., ¶5. In fact, no one had a "Bruce Jiang" name tag (for ACH). *Id.*

When Mr. Druckman first approached the ACH booth, he spoke with Jun Yang, an employee of Litai. Second Jiang Dec., ¶3; Wu and Yang Decs., ¶3; Xia Dec., ¶11. Mr. Yang was with two customers and was too busy to speak with Mr. Druckman, so he directed Mr. Druckman to Mr. Wu, also an employee of Litai. *Id*. Thus, during the attempted service, Mr. Druckman communicated with Mr. Wu of Litai, not Mr. Jiang of ACH as he claims. *Id.* Mr. Jiang was not at the booth at the time. *Id.* Mr. Druckman only engaged with Mr. Wu. *Id.*

Mr. Druckman also erroneously alleges that he told Mr. Jiang, "I have some papers for you," and "Mr. Jiang stuck his hands in his pockets as if to avoid service of the documents." Dkt. 26-1, ¶11. This never happened. Instead, Mr. Druckman spoke with Mr. Wu and placed the papers in front of Mr. Wu, not Mr. Jiang. Second Jiang Dec., ¶5; Wu Dand Yang Decs., ¶3; Xia Dec., ¶11. Further, Mr. Wu simply avoided accepting information from Mr. Druckman, as he did understand what Mr. Druckman was attempting to provide, and because Mr. Druckman was aggressive and discourteous, speaking in a hurried and unclear manner, which caused confusion

3

among those at the booth. *Id.* He also spoke very quickly, which was hard to understand, as none of the individuals spoke fluent English. *Id.* In short, the vast majority of the evidence shows that Mr. Jiang (of ACH) <u>was not</u> served – therefore, ACH <u>did not</u> receive the packet left by Mr. Druckman. So, service at the trade show was improper and ineffective and should be quashed.

### III.  COUNSEL FOR ACH COULD NOT BE SERVED

IDQ argues that service on counsel for ACH was proper, but IDQ fails to mention that counsel for ACH's first contact with counsel for IDQ was to discuss waiver <u>of service</u>. And, at that initial discussion, counsel for ACH plainly explained that he was not authorized to and would not accept service, unless there was an agreement. And, an agreement was never reached. Indeed, after the initial contact among counsel for IDQ and ACH, IDQ did not attempt to serve ACH through counsel, thereby acknowledging that service on counsel would be deficient. After counsel for ACH investigated the defective trade show service, counsel for ACH advised counsel for IDQ th, at the 26(f) conference, that ACH would seek to quash the defective service, and again noted that he would not accept service for ACH. Thus, there is simply no legal support for IDQ's claim of service on counsel of record for a foreign defendant entitled to Hague service.

### IV.  ACTUAL NOTICE IS IRRELEVANT TO QUESTION OF PROPER SERVICE

IDQ confuses the factual and legal issues by arguing "actual notice." Dkt. 26 at 10. But, actual notice is irrelevant. Notice cannot constitute service. If this were the case, service by mail on foreign entities would be appropriate, and it is not. Instead, Rule 4 has specific requirements for service on foreign entities, none of which indicate that "actual notice" is a consideration.

### V.  COURT-WAIVER OF THE HAGUE REQUIREMENT IS NOT PROPER HERE

At times, courts have authorized service on counsel, allowing service under Rule 4(f)(3)—by any means not prohibited— when Hague service would cause an unreasonable delay. But, most courts hold that Rule 4(f)(3) should only be considered as a "final effort . . .

when other means have failed," such as a country's Central Authority refusing to serve

defendant. *Marcantonio v. Primorsk Shipping Corp.*, 206 F.Supp.2d 54, 58 (D. Mass. 2002). All

the cases cited by IDQ are distinguishable from the present facts. All but one case cited by IDQ

have particular facts that made Rule 4(f)(3) appropriate.[2] In  the single patent case cited, *LG*

*Elecs., Inc. v. ASKO Appliances, Inc.*, No. 08-cv-828-JAP, 2009 WL 1811098 (D. Del. 2009),

defendant made repeated attempts to frustrate service. *Id.* at *4. Here, in contrast, ACH was

willing to waive service, and indeed, ACH is still willing to waive service if IDQ agrees to a 90-

day stay, the time due under the federal rules. *See* Fed. R. Civ. P. 4(f). Thus, there is no basis to

apply Rule 4(f)(3), and IDQ should be expected to serve ACH in an appropriate manner.

## VI.     CONCLUSION:  SERVICE SHOULD BE QUASHED AND ACH SHOULD BE SERVED UNDER THE HAGUE

IDQ has made two separate failed service attempts so far. ACH requests that each of

these be found ineffective and quashed, IDQ should be ordered to effectuate properly serve ACH

and all further deadlines in the case should also be stayed until 90 days after proper service.

Respectfully submitted,

Dated: December 8, 2015

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue

---

[2] *See In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262 (S.D.N.Y. 2012) (a securities case where defendant resided in China but was not a citizen of China); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) (case not involving a foreign defendant); *Brown v. China Integrated Energy, Inc.,* 285 F.R.D. 560 (C.D. Cal. 2012) (case where a registered agent was within the United States); *The Knit With v. Knitting Fever, Inc.*, Nos. 08-cv-4221, 08-cv-4775, 2010 WL 4977944 (E.D. Pa. 2010) (case where the Italian Central Authority refused to process Hague service); *Ackerman v. Glob. Vehicles U.S.A., Inc.*, No. 4:11-cv-687-RWS, 2011 WL 3847427 (E.D. Mo. 2011) (case where defendant chose not to respond to the plaintiff's motion).

Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

ATTORNEY FOR DEFENDANT
AEROSPACE COMMUNICATIONS
HOLDINGS CO., LTD. (for the limited
purposes of this Motion to Quash Service as
well as other necessary papers in the case[3])

---

[3] This is a limited appearance only, and it does not allow IDQ to serve counsel for ACH, which
would allow IDQ to benefit from the ineffective attempts at service and continued refusal to
follow proper procedures for proper service of a foreign company under the Hague Convention.

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the following counsel of record who have appeared in this case on behalf of the identified parties:

*/s/ Lionel M. Lavenue*

Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

*Counsel for Defendant Aerospace Communications Holdings Co., Ltd.* (for the limited purposes of this Motion to Quash Service)