**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| IDQ OPERATING, INC.,<br><br>                   Plaintiff,<br><br>    v.<br><br>AEROSPACE COMMUNICATIONS HOLDINGS<br>CO., LTD.<br><br>                  Defendant. | C.A. No. 6:15-cv-781-JRG-KNM |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO**
**QUASH, OR ALTERNATIVE REQUEST FOR MODIFIED SERVICE OF PROCESS**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ................................................................................................... 1

II.    ARGUMENT ........................................................................................................... 1

    A.    Service in Las Vegas was proper. ........................................................... 1

    B.    Service of ACH's counsel was also proper ............................................ 3

    C.    If service is deemed ineffective, alternative service under Rule 4(f)(3) is warranted ............................................................................................... 4

III.   CONCLUSION ....................................................................................................... 4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerielle Techs., Inc. v. Procare Int'l Co.*,
  No. 2:08-cv-284-TJW, 2011 WL 1238924 (E.D. Tex. Mar. 1, 2011) ......................................4

*Affinity Labs of Tex., LLC v. Nissan N. Am., Inc.*,
  No. 13-cv-369-JCM (W.D. Tex. July, 2, 2014), Dkt. # 58 ...................................................3, 4

*Gramercy Ins. Co. v. Kavanagh*,
  2011 WL 1791241 (N.D. Tex. May 10, 2011) ..........................................................................4

*LG Elecs., Inc. v. ASKO Appliances, Inc.*,
  2009 WL 1811098 (D. Del. June 23, 2009)................................................................................4

*Network-1 Sec. Sols., Inc. v. D-Link Corp.*,
  433 F. Supp. 2d 795 (E.D. Tex. 2006) .......................................................................................3

*People's United Equip. Fin. Corp. v. Hartmann*,
  447 F. App'x 522 (5th Cir. 2011) ..............................................................................................1

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ...................................................................................................4

*RPost Holdings, Inc. v. Kagan*,
  No. 2:11-cv-238-JRG, 2012 WL 194388 (E.D. Tex. Jan. 23, 2012).........................................4

**Other Authorities**

Fed. R. Civ. P. 4 ...................................................................................................................................4

## I.   <u>INTRODUCTION</u>

ACH proffers five declarations from interested individuals to contest nearly all facts in the sworn affidavit of Mr. Martin Druckman, a veteran independent licensed process server with over forty years of experience.  Mr. Druckman, however, has no reason to present anything other than a wholly factual account of the service he effected, and much to lose if he presents anything else.  Therefore, where ACH's unsworn declarations are at odds with Mr. Druckman's sworn affidavit, it is only Mr. Druckman's version that can be accepted as true.  ACH's motion should therefore be denied.

## II.   <u>ARGUMENT</u>

### A.   **Service in Las Vegas was proper.**

"The general rule is that '[a] signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence.'"  *People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011) (citations omitted).  Here, IDQ filed a signed and sworn return of service from a veteran process server— i.e., prima facie evidence of valid service.  *See* Dkt. # 10 at 2.  ACH, in turn, attacks the valid service with inconsistent and implausible versions of events from unavailable declarants.  ACH's efforts fall far short of its strong and convincing burden of proof.  Accordingly, ACH's motions should be dismissed.

The parties dispute much of what happened on November 3, 2015 in Las Vegas.  *See* Dkt. # 24, 26, 28.  There is, however, no dispute that Mr. Druckman went to ACH's booth,

where he left documents on the table for ACH's representative, Mr. Jiang.[1]  Beyond this, ACH

offers shifting versions of what happened in Las Vegas.  ACH's first version came from Mr.

Jiang alone.  *See* Dkt. # 13-1.  The second version comes from a six-page supplementation of

Mr. Jiang's declaration as well as three additional declarations meant to corroborate Mr. Jiang's

new version of events.  *See* Dkt. # 28-1, 28-2, 28-3, 28-4.

In his first declaration, Mr. Jiang claims that Mr. Druckman visited ACH's booth, asked a

Litai employee for Mr. Jiang, was told by the Litai employee that Mr. Jiang was away, and then

left a packet of documents that the Litai employee mistook as advertising materials and

discarded.  *See* Dkt. # 13-1 ¶¶ 9–10, 12.  In his second declaration, Mr. Jiang now claims that

Mr. Druckman spoke to **two different** Litai employees while being observed by ACH's

refrigerant manager, who was next to the booth for an unexplained reason.  *See* Dkt. 28-1 ¶¶ 3–5,

8.

In addition to the new sequence of events and new alleged participants, ACH's two

versions of the story differ from each other in other significant ways.  For example, Mr. Jiang

first said:  "***Only*** engineers involved in car floor mats attended the [AAPEX] trade show.  There

were **no employees** (engineers, managers, and/or officers) at the trade show for refrigerants."

Dkt. # 13-1 ¶ 7 (emphases added).  Now Mr. Xia admits attending the AAPEX trade show, being

"employed by ACH in the refrigerants department," and also being "in charge of marketing for

the [infringing] R-134a refrigerant product."  Dkt. # 28-3 ¶ 2.  Indeed, he was even photographed

at ACH's booth.  *See* Dkt. # 28-3 ¶ 6.

---

[1] ACH's declarants admit Mr. Druckman visited ACH's booth.  Dkt. # 28-1 ¶ 2.  They also admit he asked for Mr. Jiang.  Dkt. # 13-1 ¶ 9 ("I understand that [Mr. Druckman] approached [ACH's] booth and asked whether the registered contact person for ACH [Mr. Jiang] was present at the booth . . . .").  Finally, they admit Mr. Druckman left papers at ACH's booth.  *Id.* ("[A] packet of documents [from Mr. Druckman] were left at [ACH's] booth.").

But the Court need not sift through the various discrepancies in ACH's declarations to assess their credibility because they are implausible.[2]  It is simply not credible that a veteran process server such as Mr. Druckman would simply drop off service papers with someone who wore a badge with a last name ("Wu") completely different from the last name of the person he was supposed to serve.  It is also questionable that Mr. Wu believed he was being given "advertising materials" (Dkt. # 28-1 ¶ 6) by someone who was so "aggressive and discourteous" as to cause "some concern among those at the booth."  *Id.* ¶ 5.  And, perhaps most significantly, it is not realistic that a veteran licensed process server with no affiliation to IDQ would swear to an account as wildly divergent from the "facts" as ACH professes.  ACH's retelling of the Las Vegas events simply cannot be accepted as accurate.  Service was proper.

It is also worth noting that even in his supplemental declaration Mr. Jiang ***still*** does not deny that he was authorized to accept service on behalf of ACH, even after IDQ pointed out this glaring omission.  Dkt. # 26 at 7.  Thus, there is no dispute that Mr. Jiang was authorized to (and did actually) accept service for all of the reasons set forth in IDQ's opposition.

### B.      Service of ACH's counsel was also proper.

The case law confirms that attorneys can be served.  *See, e.g.*, *Network-1 Sec. Sols., Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 797 (E.D. Tex. 2006) (service on defendant's attorney in the courtroom); Order, *Affinity Labs of Tex., LLC v. Nissan N. Am., Inc.*, No. 13-cv-369-JCM, (W.D. Tex. July, 2, 2014), Dkt. # 58 at 7–10 ("*Affinity Labs*") (service on defendant's attorney without use of the Hague Convention procedures).

---

[2] Compare these discrepancies with those ACH cites in Mr. Druckman's affidavit:  (1) a clerical error about the date and (2) a dispute over whether Mr. Jiang's badge had his Chinese first name or the first name ("Bruce") he indisputably uses for many business purposes.  *See* Dkt. # 13-3 (AAPEX Trade Show registration listing "bruce@zhonghuico.com" as Mr. Jiang's email).

### C.   If service is deemed ineffective, alternative service under Rule 4(f)(3) is warranted.

If it is determined that ACH has not been served, there is ample reason here to allow alternative service under Rule 4(f)(3).  ACH does not cite a single Texas case supporting the proposition that Rule 4(f)(3) is a "last resort."  That is because "Rule 4(f) does not create a hierarchy of preferred means of service, and service pursuant to Rule 4(f)(3) is as favored as service available under other subparts."  *Gramercy Ins. Co. v. Kavanagh*, 2011 WL 1791241, at *1 (N.D. Tex. May 10, 2011) (citation omitted); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." (citation omitted)).

Here, the delays involved with service under the Hague Convention justify use of Rule 4(f)(3).  *See RPost Holdings, Inc. v. Kagan*, 2012 WL 194388, at *3 (E.D. Tex. Jan. 23, 2012) (Gilstrap, J.) (authorizing service under Rule 4(f)(3) "by electronic mail on [defendant]'s counsel"); *Aerielle Techs., Inc. v. Procare Int'l Co.*, 2011 WL 1238924, at *1 (E.D. Tex. Mar. 1, 2011) (finding default where the court had previously "authoriz[ed] alternative service under [Rule] 4(f)(3)"); *Affinity Labs* at 10 ("Affinity shall be permitted to effectively serve the summons and complaint on foreign defendant NML through NNA or its outside counsel . . . ."); *LG Elecs., Inc. v. ASKO Appliances, Inc.*, 2009 WL 1811098, at *4 (D. Del. June 23, 2009) ("[S]ervice upon [defendant's] attorney is warranted in order to prevent further delays in litigation.").  Therefore, IDQ respectfully requests (in the alternative) for leave to serve ACH's counsel under Rule 4(f)(3).

## III.   CONCLUSION

For the reasons above, ACH's motion to quash should be denied.

December 11, 2015                              Respectfully submitted,


                                              *s/Allen Gardner*
                                              Michael E. Jones
                                              SBN: 10929400
                                              mikejones@potterminton.com
                                              Allen F. Gardner
                                              SBN: 24043679
                                              allengardner@potterminton.com
                                              **POTTER MINTON, PC**
                                              110 North College
                                              Suite 500
                                              Tyler, Texas 75702
                                              Tel: 903-597-8311
                                              Fax: 903-593-0846

                                              Of Counsel:
                                              Janine A. Carlan (DC Bar No. 464254)
                                              Anthony W. Shaw (DC Bar No. 362746)
                                              Taniel E. Anderson (DC Bar No. 997406)
                                              **ARENT FOX LLP**
                                              1717 K St., N.W.
                                              Washington, DC 20006
                                              Phone: (202) 857-6000
                                              Fax: (202) 857-6395
                                              janine.carlan@arentfox.com
                                              anthony.shaw@arentfox.com
                                              taniel.anderson@arentfox.com

                                              Marylee Jenkins
                                              **ARENT FOX LLP**
                                              1675 Broadway
                                              New York, NY 10019
                                              Phone: (212) 484-3900
                                              Fax: (212) 484-3990
                                              marylee.jenkins@arentfox.com

                                              *Counsel for IDQ Operating, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 11, 2015.

*/s/ Allen F. Gardner*
Allen F. Gardner